**J. Willard NALLS, Jr., as Administrator for the Estate of John C. Abraham, Deceased,**

v.

**ROLLS–ROYCE LIMITED, Appellant Aerospatiale (SNIAS) (Societe National Industrielle Aerospatiale), et al.**

**Carol E. RAMAMURTI, as Administratrix for the Estate of Chinni P. Ramamurti**

v.

**ROLLS–ROYCE LIMITED, Appellant Aerospatiale (SNIAS) (Societe National Industrielle Aerospatiale), et al.**

**Carol E. RAMAMURTI, as Administratrix for the Estate of Chinni P. Ramamurti**

v.

**ROLLS–ROYCE LIMITED, et al., Air India, Inc., Appellant.**

**Nos. 82–1975, 82–1976 and 82–2033.**

United States Court of Appeals, District of Columbia Circuit.

March 8, 1983.

Certiorari Denied May 31, 1983. See 103 S.Ct. 2444.

### ON DENIAL OF REHEARING EN BANC

Before ROBINSON, Chief Judge, and WRIGHT, TAMM, MacKINNON, WILKEY, WALD, MIKVA, EDWARDS, GINSBURG, BORK and SCALIA, Circuit Judges.

### ORDER

PER CURIAM.

The suggestion for rehearing *en banc* of Rolls-Royce Limited has been circulated to the full Court. A majority of the members of the Court have not voted in favor thereof. On consideration of the foregoing, it is

ORDERED by the Court *en banc* that the suggestion is denied.

Circuit Judges MacKINNON and WILKEY would grant the suggestion for rehearing *en banc.* A statement of Circuit Judge WILKEY is attached.

*Statement as to Reasons for Voting for En Banc Consideration*

WILKEY, Circuit Judge, with whom joined MacKINNON, Circuit Judge:

Appellants ask us to review the district court's decision not to dismiss the suit against them on *forum non conveniens* grounds. Two judges of the motions panel considering the appeal, without opinion, dismissed for lack of jurisdiction. I believe that justice requires consideration of the *forum non conveniens* and appealability issues presented by this case by a merits panel or, failing that, *en banc.*

### I. *Forum non conveniens* ISSUES

As the district court acknowledged, defendants' *forum non conveniens* motion presents a difficult legal question. We set forth the applicable standard for *forum non*

*conveniens* dismissals in *Pain v. United Technologies Corporation:*[1]

[A] district judge's *forum non conveniens* inquiry should proceed in four steps. As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of *private* interests, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. If the trial judge finds this balance of the private interests to be in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum. If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

Private interest factors include matters such as the relative ease of access to sources of proof, availability of compulsory process, and the cost of obtaining attendance of witnesses; public interest factors comprise the burden imposed by the trial in the community, the degree of local public interest in the dispute, and whether local or foreign law will be applicable.[2] Finally, *Pain* noted that the plaintiff's citizenship and residence in the United States merit no special consideration in this balancing process.[3]

A consideration of these factors shows that, at the very least, appellants may make a strong case for dismissal on *forum non conveniens* grounds.[4] First, it is clear that there is an adequate alternative forum which possesses jurisdiction over this case. Fifty-four related suits, arising out of this accident and brought against these same defendants, are now before the English High Court, in London, England. Were plaintiffs' suits to be dismissed here, they could be consolidated with those in London.

Second, as to the factors of private interest, the most critical fact is that no event relative to plaintiffs' claim occurred in the United States. The accident itself occurred in India; the airplane which crashed was maintained in India by two Indian airlines; the plane was manufactured in France, and its engine manufactured in England. Hence, with the exception of one Rolls-Royce employee, "tangentially involved" with the facts of this case, who has now been transferred to Seattle, Washington, witnesses and documentary evidence as to the manufacture, maintenance and flight of the airplane are in France, England or India. And while some witnesses—members of the plaintiffs' family—who might testify as to the issue of damages live in the United States, other witnesses on this issue as well might have to be brought from India, where Nalls' decedent was a citizen and resided at the time of the accident.

On the other hand, some private factors do favor a trial in the District of Columbia. The District is the only place in the United States where plaintiffs can acquire personal jurisdiction over all the defendants—Air India, the French manufacturer, and the British manufacturer who are defendants of the present suit. Plaintiffs live in the United States, and hence it may be more convenient for them to bring suit here than in England. And it is arguably no more inconvenient for witnesses to travel to Washington, D.C., than to London, England, although we note that it is certainly more inconvenient for them to have to attend trial in both cities than in one. Finally, plaintiffs have agreed to mitigate the inconvenience to Rolls-Royce to some extent

---

held to be insufficient to support standing. *See* cases cited *supra* notes 41–42.

1. 637 F.2d 775, 784–85 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).

2. *Id.* at 782, 786–91 (private interest factors); *id.* at 791–95 (public interest factors).

3. *Id.* at 795–99.

4. Our discussion draws on the factual findings of the district court in *Nalls v. Rolls-Royce Ltd.*, Memorandum Order at 1–3 (D.D.C. 23 July 1982).

by deposing Rolls-Royce employees in England.

Third, with regard to the public interest factors, it is striking that there is absolutely no connection between this suit and the District of Columbia, although there are some contacts with other parts of the United States. One decedent, an American citizen, lived with his family in the State of Washington; the other was a citizen of, and lived in, India, although he had been educated in the United States and planned at some point to return to Baltimore, where his wife and family lived. As we noted in *Pain,* this lack of contact reflects adversely both on the justification for burdening the community with a lengthy and complicated trial and on the interest the community might have in conducting the trial locally. Moreover, the applicable law is entirely foreign—Indian, English or French. There is thus no local or federal policy which might be vindicated in the present suit. And the trial court will have to resolve difficult questions of foreign law on the basis of expert testimony.

Fourth, plaintiffs maintain that they would suffer inconvenience or prejudice by having to reinstate their suit in London. They suggest the unavailability of attorneys on a contingent fee basis and the possibility this suit will suffer lengthy delays there or be "confused" in the related suits already brought. But these fears are absolutely unsubstantiated in the record or in the trial court's opinion. We are hardly free to assume that English courts are unable to do justice to plaintiffs' claims, and know of no evidence that these courts are any more dilatory than their American counterparts.

It is questionable, to say the least, whether the presumption in favor of plaintiff's forum choice survives a balancing of either the private or the public interest factors. This is hardly surprising for a suit which asserts claims under foreign law, arises out of an accident which occurred in a foreign country, and is brought against foreign defendants by plaintiffs who have no connection whatsoever with the District of Columbia. This suit causes the expense and harassment to defendants and witnesses, and imposes the burdens on our courts, which the *forum non conveniens* doctrine aims to prevent. Moreover, the main factor which favors plaintiffs' suit here—the American nationality, residence, or intended residence of plaintiffs and decedents—is precisely the factor which we took great care, in *Pain,* to identify as carrying no special weight in the balancing process.[5] Finally, the prosecution of fifty-four suits, arising out of the same accident and asserting similar claims, before the Queen's Bench of the English High Court gives us the greatest possible assurance that plaintiffs may without demonstrable prejudice have resort to a foreign forum if the suit here is dismissed. Whether we could, given these facts, sustain the district court's decision on appeal presents for me a difficult and important question of *forum non conveniens* law.

## II.  APPEALABILITY

Rather than having this court proceed to review these difficult and important questions of *forum non conveniens* law, the motions panel dismissed the appeal for lack of jurisdiction. Appellants had contended that this court had jurisdiction under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*[6] I believe that the motions panel erred in this regard, and that review of the district court's decision is appropriate *now.*

The *Cohen* rule defines certain trial court decisions to be "final" although these decisions do not definitively adjudicate the entire controversy between the parties. The rationale of the rule is that some district court decisions, although interlocutory, may irrevocably dispose of rights of the parties and therefore should be reviewable at once. In particular, *Cohen,* as interpreted by subsequent cases, establishes three criteria for

---

5.  *See* 637 F.2d at 797–99.

6.  337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

reviewability: (1) the decision must be conclusive, *i.e.*, not open to further consideration by the district court; (2) the decision must resolve an issue *separate* from the merits, rather than be a step towards final decision merged within the final judgment; (3) the decision must be effectively unreviewable on appeal from the final judgment in the case—*i.e.*, parties' rights will be significantly undermined if review is postponed until after final resolution of all issues in the case. In sum, as the Supreme Court recently described the class of reviewable "collateral orders," "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal·from a final judgment." [7]

The instant case meets each of the three criteria for appealability. *First,* the district court's decision is conclusive for all practical purposes. While it is in theory possible that the district court may at some future point decide to dismiss on *forum non conveniens* grounds, it seems most unlikely that it would do so. Defendants have already laid before the court the various reasons why litigation in this forum would impose undue burdens on them, on witnesses and on the court. The court, not persuaded by these arguments now, is unlikely to change its mind after significant time and resources have already been invested in pleadings, discovery, and other preparation for trial. Moreover, given the factors discussed above, it is hard to imagine this case becoming any *less* appropriate for trial here than it already is.

*Second,* the district court order decides an important issue collateral to the merits. It is clear that the decision as to the appropriate forum does not require decision as to the merits of the controversy. And the decision as to the appropriate forum is in no way "merged" into a final judgment on the merits. This is because the rights at stake in these two decisions are fundamentally different. The decision on the merits, of course, disposes of plaintiff's substantive rights, while the *forum non conveniens* decision addresses defendant's rights (and the rights of other participants in the law suit) to be tried in a forum convenient to them and to be free from vexatious and harassing litigation.

Moreover, the *forum non conveniens* decision is sufficiently important to warrant immediate review. The Supreme Court, when first establishing in *Gulf Oil Corp. v. Gilbert* [8] the power of the federal courts to dismiss cases on *forum non conveniens* grounds, declared the importance of *forum non conveniens* doctrine as a means of protecting the rights of litigants as well as promoting efficient administration of the courts.[9] As *Piper Aircraft Co. v. Reyno* [10] states, "[u]nder *Gilbert,* dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court" [11] —surely considerations of importance.[12]

---

7. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). *See also Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374–75, 101 S.Ct. 669, 673–674, 66 L.Ed.2d 571 (1981); *Abney v. United States,* 431 U.S. 651, 658–62, 97 S.Ct. 2034, 2039–2041, 52 L.Ed.2d 651 (1977); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170–72, 94 S.Ct. 2140, 2149–2150, 40 L.Ed.2d 732 (1974); *Cohen,* 337 U.S. at 545–47, 69 S.Ct. at 1225–1226.

8. 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

9. *Id.* at 507–09, 67 S.Ct. at 842–843.

10. 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

11. *Id.* at 249, 102 S.Ct. at 262.

12. Plaintiffs cite cases involving the choice of forum for arbitration proceedings, *Acton Corp. v. Borden, Inc.,* 670 F.2d 377, 380–81 (1st Cir. 1982); *USM Corp. v. GKN Fasteners, Ltd.,* 574 F.2d 17, 19 (1st Cir.1978); *New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183, 185–86 (1st Cir.1972), to show that the rights protected by the *forum non conveniens* doctrine are too insignificant to warrant invocation of the collateral order doctrine. But cases involving choice of forum for arbitration are clearly distinguishable. Orders to arbitrate enforce a prior contractual agreement, and courts may justifiably conclude that the *place* of arbitration is less important to the parties when they have the opportunity to specify the place

Plaintiffs also suggest that wholly discretionary decisions, such as consideration of *forum non conveniens* motions, should not be appealable under *Cohen* because they simply cannot present a question "too important to be denied review." Arguably, the exercise of the trial judge's discretion is less likely to be reversed and offers less reason for intervention to guide the trial court's decision.[13] But the Supreme Court decisions on the collateral order doctrine do not support the proposition that a discretionary decision is generally not appealable under this doctrine. The Supreme Court's general pronouncements in recent cases simply do not mention discretion at all as a factor to be considered. And the courts of appeals have, in numerous instances, granted review of collateral orders for abuse of discretion.[14]

The *Cohen* case did observe that "[i]f the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security, a matter the statute makes subject to reconsideration from time to time, appealability would present a different question." [15] But this delphic remark hardly precludes review of "discretionary" decisions under the *Cohen* doctrine. Instead, this language could mean simply that an order as to amount might not be reviewable because not conclusive—*i.e.,* because the district court retained discretion to modify the amount.

More importantly, even if *Cohen* does suggest that appellate courts should be more hesitant to grant immediate review of discretionary collateral decisions, its use of the term "discretion" is ambiguous. A decision may be "discretionary" either in the sense that there is "no law to apply"—*i.e.,* no standards to guide the trial court's decision—or in the sense that standards to be applied are sufficiently flexible and fact-dependent so that a broad range of outcomes will be reasonably consistent with the applicable standards. In the former case, courts of appeals may decline to review a collateral order because it is futile to attempt to second-guess what is essentially an arbitrary decision. For example, in *United States v. Sorren,*[16] the court declined to review the trial court's refusal to grant an evidentiary hearing on the personal jurisdiction issues raised by *United States v. Toscanino,*[17] because "the remand in *Toscanino* explicitly granted the district court discretion to determine whether such an evidentiary hearing was warranted." [18] The *Toscanino* issue exemplifies the case in which the district court exercises discretion because there is no law to apply; as to the

---

in the contract and fail to do so. Of course, no such prior agreement was possible in the present case. Moreover, arbitration agreements are made enforceable in court by a specific congressional enactment, the Federal Arbitration Act. This act strongly endorses values of the efficiency and speed of arbitration, values which would be undercut by extended litigation over the forum of arbitration. In contrast, no such congressional policy is at issue here. Finally, the inconvenience to the parties at issue in the choice of an arbitration forum will be much less than in the present case, because arbitration will generally occur within the United States and rely heavily on documentary evidence rather than live witnesses.

13. Of course, this argument, to the extent convincing, is a matter of intuition rather than logic, for one cannot deduce the answer to the empirical question of how often judges' decisions on a given issue are reversible from the standard of appellate review alone, without knowing how often in fact trial judges transgress that standard.

14. *See, e.g., Lowe v. Pate Stevedoring Co.,* 595 F.2d 256, 257 (5th Cir.1979) (award of attorneys' fees); *Caston v. Sears, Roebuck and Co.,* 556 F.2d 1305, 1308 (5th Cir.1977) (appointment of counsel); *Flowers v. Turbine Support Division,* 507 F.2d 1242, 1244 (5th Cir.1975) (permission to proceed in forma pauperis); *Garber v. Randell,* 477 F.2d 711, 715, 718 (2d Cir.1973) (consolidation); *Norman v. McKee,* 431 F.2d 769, 773–74 (9th Cir.1970), *cert. denied,* 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971) (approval of partial class settlement); *MacAlister v. Guterma,* 263 F.2d 65, 67, 69 (2d Cir.1958) (pretrial consolidation).

15. 337 U.S. at 547, 69 S.Ct. at 1226.

16. 605 F.2d 1211 (1st Cir.1979).

17. 500 F.2d 267 (2d Cir.1974).

18. 605 F.2d at 1215.

circumstances in which the trial court enjoyed discretion as to whether to hold a hearing, the court's remand was essentially standardless.[19]

An exemplary case of the second type of discretionary decision—a decision guided by flexible, open-ended standards—is the Supreme Court decision in *Stack v. Boyle*.[20] There the Court held reviewable under the collateral order doctrine the question whether bail was "excessive." Clearly, the decision fixing the amount of bail is discretionary in the second sense noted above, for this decision is generally acknowledged to leave much leeway to the judicial officer below.[21] Nonetheless, the Supreme Court held the decision immediately reviewable. Moreover, the Court's reasoning confirms that *Cohen's* dictum as to the nonreviewability of "discretionary" orders refers to discretion in the sense of "no law to apply." In *Stack*, "[p]etitioners' motion to reduce bail did not merely invoke the discretion of the District Court setting bail within a zone of reasonableness .... As there is no discretion to refuse to reduce excessive bail, the order denying the motion to reduce bail is appealable ... [citing *Cohen*]." [22] Once within the zone of reasonableness, the amount of bail, like the amount of security in *Cohen*, is an essentially standardless decision which it would be futile to review; but review of the discretionary collateral order is available to determine whether the decision lies within that zone—*i.e.*, reasonably applies relevant legal standards.

Similarly, *forum non conveniens* law comprises flexible standards whose application by the trial court should be immediately reviewable for abuse of discretion. We set out these standards in *Pain v. United Technologies Corp.*[23] To use the "discretionary" label as a way of deprecating the impor-

tance of the *forum non conveniens* decision ignores the expense, hardship and injustice to parties and witnesses, as well as costs to the administration of justice, which trial in the wrong forum may cause. *Forum non conveniens* motions thus present an issue collateral to the merits and important enough to warrant prompt review.

*Third,* the district court's decision is effectively unreviewable on appeal from the final judgment on the merits. The rights conferred by *forum non conveniens* law— the right not to be tried in an unreasonably inconvenient forum—will be effectively extinguished if review is postponed. Perhaps the closest analogy would be a district court's denial of a motion to dismiss on double jeopardy grounds. As the Supreme Court held in *Abney v. United States*,[24] the right conferred by the double jeopardy clause—the right *not to stand trial* a second time for the same offense—is effectively denied when the trial proceeds, regardless of its outcome. Similarly, as the Court notes in *Abney*,[25] the *Cohen* case—which established the collateral order doctrine— can be interpreted to hold that at stake there was the right of the corporation *not to stand trial at all* unless the shareholder suing derivatively posted security for defendant's cost of litigation. Such a right not to stand trial is at issue in the present appeal. After the trial is concluded, all the expenses and burdens of trial in the inconvenient forum have already been incurred. To delay review until a final judgment is entered is to deny review altogether.

Plaintiff-appellee notes that decisions on motions made under 28 U.S.C. § 1404(a), for transfer of cases from one court to another *within the United States,* are not appealable under the collateral order rule. Such motions, however, are clearly distin-

**19.** 500 F.2d at 281. *See also Midway Mfg. Co. v. Omni Video Games, Inc.,* 668 F.2d 70, 72 (1st Cir.1981) (no statutory standards at all governing the decision that the court declined to review).

**20.** 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

**21.** *See, e.g., Allen v. U.S.,* 386 F.2d 634, 636 (D.C.1967).

**22.** 342 U.S. at 6, 72 S.Ct. at 4.

**23.** 637 F.2d at 781–85.

**24.** 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

**25.** 431 U.S. at 662 n. 7, 97 S.Ct. at 2041 n. 7.

guishable in this context from motions to dismiss on *forum non conveniens* grounds. Indeed, *All States Freight v. Modarelli*,[26] a leading case on review of section 1404(a) motions, emphasizes that "the *forum non conveniens* doctrine is quite different from section 1404(a)."[27] On review of the same case, the Supreme Court quoted this language with approval in holding that section 1404(a) was a revision rather than merely a codification of *forum non conveniens* doctrine,[28] and the Court recently had occasion to reaffirm these differences in *Piper Aircraft Co. v. Reyno*.[29]

In particular, several of the differences between section 1404(a) and *forum non conveniens* motions suggest that denial of the latter should be appealable even though denials of the former are not. First, Congress' purpose in enacting section 1404(a) was to make the judicial process "cheaper and more convenient and, if possible, more prompt."[30] In deciding whether section 1404(a) motions are appealable, courts are inevitably bound to further Congress' purpose in enacting the statute; hence, considerations of speed and expense come to the forefront. These considerations of course militate against appealability under the collateral order rule. As *All States Freight* noted, "instead of making the business of the courts easier, quicker and less expensive, we [would] now have the merits of the litigation postponed while appellate courts review the question of where the case may be tried."[31] In contrast, *forum non conveniens* doctrine has its roots in the common law:[32] in deciding the appealability of rulings under this doctrine, considerations of expense and speed, though clearly significant, need not be paramount to the rights of litigants or to the public interests which the doctrine was designed to protect.

Second, section 1404(a) "was designed as a 'federal housekeeping measure,' allowing easy change of venue within a *unified federal system*."[33] Therefore, significantly more is at stake for the parties in a *forum non conveniens* than in a section 1404(a) motion. For example, transfer under section 1404(a) cannot change the law applicable in the suit, while dismissing on *forum non conveniens* grounds may in effect force the suit to be brought in a jurisdiction applying different law.[34] And transfer to a foreign court may therefore solve problems associated with the American court's applying unfamiliar foreign law, while section 1404(a) cases never address this problem. More generally, the differences between trial in an American court and a foreign court will almost inevitably be greater than those between trial in two federal courts in the United States. Hence, when the defendant makes a *forum non conveniens* motion, he asserts interests which must transcend those which may be at stake in a section 1404(a) motion and which therefore may deserve more careful judicial consideration.

Of course, section 1404(a) transfers are analogous to dismissal under *forum non conveniens* law in some respects. First, both are discretionary with the district judge; second, the parties do not lose the rights secured by their underlying claims; third, interlocutory review would cause delay. The first point—the relevance of "discretion"—has been discussed. The second and third points do not distinguish these decisions from those for which review is available under the collateral order doctrine. All collateral orders preserve the

---

**26.** 196 F.2d 1010 (3d Cir.1952).

**27.** *Id.* at 1011.

**28.** *See Norwood v. Kirkpatrick*, 349 U.S. 29, 31, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955).

**29.** 454 U.S. 235, 253–55, 102 S.Ct. 252, 264–65, 70 L.Ed.2d 419 (1981).

**30.** *All States Freight*, 196 F.2d at 1011.

**31.** *Id.*

**32.** *See Piper Aircraft*, 454 U.S. at 248 n. 13, 102 S.Ct. at 262 n. 13.

**33.** *Id.* at 254, 102 S.Ct. at 265 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 613, 84 S.Ct. 805, 807, 11 L.Ed.2d 945 (1964)).

**34.** *Compare Van Dusen v. Barrack*, 376 U.S. at 639, 84 S.Ct. at 820, *with Piper Aircraft*, 454 U.S. at 247, 102 S.Ct. at 261.

appellant's underlying claims, for that is what makes them "collateral"; and all collateral orders are reviewable only at the cost of delay. So the fact that *forum non conveniens* and section 1404(a) motions also possess these features tells us nothing about why one or the other is, or should be, reviewable. Rather, what is relevant here are those features which both distinguish *forum non conveniens* from section 1404(a) motions and underscore the justification for prompt review of *forum non conveniens* decisions: the manifestly greater differences between U.S. and foreign, as opposed to two federal, forums; and the different purposes underlying the two doctrines.

### III. CONCLUSION

Thus, I conclude that the trial court's decision not to dismiss on *forum non conveniens* grounds meets the three criteria for appealability under the collateral order doctrine and therefore that the motions panel was incorrect to dismiss the appeal for lack of jurisdiction. The result of the dismissal is that no court has given full consideration to appellants' claims. No written opinion has been issued by this court on the questions of *forum non conveniens* or of appealability. This cursory treatment follows upon the disposition of these issues in the district court in a five-page opinion which failed to apply—indeed, failed to mention—the four-part test for the application of *forum non conveniens* doctrine laid down for this circuit in *Pain,* and which gave only incomplete attention to the applicable Supreme Court precedent. The district court thus failed to consider "all relevant factors" as required by *Pain,* while reaching a result diametrically opposite to the result we affirmed on the facts in that case. It is this decision—based on a failure to apply the relevant standards—which this court now declines to consider further. Moreover, the district court declined the request for certification of interlocutory appeal without opinion; thus, no court has even evaluated the appealability of this order in a written opinion.

At a minimum, we should remand to the district court for consideration of the *forum non conveniens* issue in light of the standards set down in *Pain.* More appropriate still would be full consideration by this court of the merits of appellants' claims. I am reluctant to recommend *en banc* consideration of any case. However, since the motions panel has declined to refer the case to argument on the merits, *en banc* consideration of the district court's decision here provides the only way to correct the district court's error and to reestablish a uniform rule for the circuit. Without such consideration, we fail to do justice to these litigants and to protect our circuit from abuses of jurisdiction such as this. On that basis, I believe that *en banc* consideration is justified, either on the merits or to direct that the case be reconsidered after argument before a panel to be selected in conformance with our usual practice.