Karen GUIDI, individually and as Executrix of the Estate of Robert L. Guidi; Eve Hoffman, individually and as Executrix of the Estate of Coby M. Hoffman; Merrill Kramer; Lois Kramer, Plaintiffs–Appellants,

v.

INTER–CONTINENTAL HOTELS CORPORATION, a Delaware corporation; Inter–Continental Hotels Corporation, a corporation of the United Kingdom; Inter–Continental Hotels & Resorts Corporation; Semiramis Hotel Corp.; Saison Holdings; B.V.; Saison Corporation, Defendants–Appellees.

Nos. 97–7973, 99–7623.

United States Court of Appeals, Second Circuit.

Argued: Dec. 2, 1999.

Decided: Feb. 14, 2000.

Amended: Aug. 16, 2000.

Brian J. Shoot, New York, N.Y. (Schneider, Kleinick, Weitz, Damashek & Shoot, of counsel), for Plaintiffs–Appellants.

Robert B. Wallace, Washington, DC (Harry P. Brett, Wilson, Elser, Moskowitz, Edelman & Dicker, of counsel), for Defendants–Appellees.

Before OAKES, STRAUB, and KATZMANN, Circuit Judges.

### AMENDED OPINION

OAKES, Senior Circuit Judge:

Karen Guidi, Eve Hoffman, Merrill Kramer, and Lois Kramer ("Plaintiffs") sued Inter–Continental Hotels Corporation and other defendants (collectively "IHC") on personal injury and wrongful death claims arising from a shooting in an Egyptian hotel managed by IHC. The United States District Court for the Southern District of New York, Loretta A. Preska, *Judge,* dismissed Plaintiffs' action on the ground of *forum non conveniens,* concluding that Egypt was the better forum for their suit. Plaintiffs now appeal this dismissal, arguing that the District Court applied the wrong legal standard for determining the proper forum in this case and mistakenly relied on the existence of related litigation in favor of the Egyptian forum. Because we agree with Plaintiffs that the District Court erred in concluding that their action should be heard in Egypt, we reverse.

### BACKGROUND

In October 1993, Robert Guidi, Coby Hoffman, and Merrill Kramer were in Egypt on business. While eating dinner in the restaurant of the Semiramis Inter–Continental Hotel, which at the time was managed by IHC, all three men were shot by an Egyptian gunman named Farahat

who had entered the hotel without triggering the suspicions of hotel security. In addition to the three Americans, Farahat shot a Syrian lawyer, a French lawyer, and an Italian judge. Of his six victims, four died, including Robert Guidi and Coby Hoffman.

Immediately after the shooting, Farahat surrendered to hotel security and the Egyptian police. His claimed motivation for the shootings was religious extremism directed against foreigners. In the criminal prosecution that followed, Farahat was adjudged insane and committed to a government hospital in January 1994. He escaped from the hospital in September 1997 and the same day, with the help of at least one other person, killed ten more people in an attack on a tour bus.

Plaintiffs filed suit against IHC on October 20, 1995, joining the wrongful death claims of Guidi's and Hoffman's widows with the personal injury claims of Kramer and his wife. At the time of suit, Mrs. Guidi and Mrs. Hoffman were residents of New Jersey and the Kramers resided in Maryland. Because IHC is a Delaware company with its principal place of business in New York City and diversity existed between the parties, Plaintiffs elected to bring their action in the Southern District of New York. On July 7, 1996, IHC moved for dismissal on the ground of *forum non conveniens*, arguing that information critical to its defense could be obtained only in Egypt, that the cost of defending itself in New York would be prohibitive, that it would be unable to implead Egyptian third parties, and that an Egyptian court would better be able to apply Egyptian tort law. Plaintiffs opposed IHC's motion on several fronts, including that American plaintiffs should not be compelled to sue an American defendant in a foreign country and that Plain-

tiffs were emotionally unable to travel to Egypt for a trial.

In January 1997, IHC submitted supplemental information to the District Court which indicated that the families of the Italian judge and the French lawyer, whom Farahat had killed in the same incident that gave rise to this case, had commenced wrongful death actions in the Egyptian courts.

On July 17, 1997, the District Court granted IHC's motion to dismiss.[1] Applying the *forum non conveniens* balancing test outlined by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the court found that with respect to the private interests of the litigants, the balance slightly favored the Egyptian forum because a viewing of the premises would be possible there and because IHC would be able to implead the Egyptian government as a third party. Turning to the public interest factors presented by the case, the court found that (1) the Southern District of New York has an overburdened docket; (2) Egypt has a greater interest in the litigation than New York because it is committed to protecting its tourist industry; (3) an Egyptian court would be more familiar with Egyptian law and have a greater interest in its application; and (4) most significantly, there were two related lawsuits pending in Egypt at the time of dismissal. The court concluded that these public interest factors decisively favored the Egyptian forum, and dismissed the case on that basis.

In November 1997, Plaintiffs filed for relief from the district court's dismissal under Fed.R.Civ.P. 60(b)(6), providing evidence of increasing terrorist activity against tourists in Egypt since the time of the dismissal. Plaintiffs' evidence included the escape and subsequent killing of ten

---

1. The Background section of the District Court's Memorandum and Order identifies the basis for IHC's motion as 28 U.S.C. § 1404, the statute which governs transfers of venue between federal courts within the United States. Because this case does not involve a transfer to another federal court, § 1404 has no application here. The court, however, did not analyze the case under the law of § 1404, but correctly looked to the law of *forum non conveniens* on all but one point. We address that point in Section II.

tourists by Farahat in September 1997, as well as the terrible attack at Luxor in November 1997 that resulted in the deaths of more than 50 foreigners. Plaintiffs' motion was denied by an order dated April 16, 1999.

Plaintiffs challenge both the dismissal of their action and the denial of relief under Rule 60(b)(6) in this consolidated appeal. Plaintiffs argue primarily that the district court applied an incorrect legal standard for cases in which an American plaintiff seeks an American forum and relied excessively on the existence of related litigation in Egypt. Plaintiffs also question the district court's failure to give proper weight to the emotional toll and threats to personal safety faced by Plaintiffs if forced to bring their action in Egypt.

## DISCUSSION

■ We have recognized that our review of a *forum non conveniens* dismissal is limited to whether a district court abused its broad discretion to dismiss on such grounds. *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir.1996); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1232 (2d Cir.1996). Our limited review, however, encompasses "the right to determine whether the district court reached an erroneous conclusion on either the facts or the law." *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991) (internal quotation omitted).

Plaintiffs believe that the district court abused its discretion in at least two ways by deciding that Egypt was the better forum for this case. First, Plaintiffs argue that the district court failed to accord appropriate deference to their choice of forum as required by *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), and *Piper Air-*

*craft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Second, Plaintiffs contest the significance given by the district court to the related wrongful death cases pending in Egypt at the time of its decision, and argue that the district court confused *forum non conveniens* with transfer to another federal court under 28 U.S.C. § 1404(a). Although we do not agree with Plaintiffs that *Koster* establishes a different *forum non conveniens* standard for American citizens than that set forth in the more familiar case of *Gilbert, see Alcoa Steamship Co. v. M/V Nordic Regent,* 654 F.2d 147, 152 (2d Cir.1980) (en banc), we do find that the district court did not give sufficient weight to Plaintiffs' choice of forum and relied too heavily on the existence of the Egypt litigation. Moreover, we believe that the special circumstances presented by this case—specifically, the emotional burden on Plaintiffs of returning to the country where they or their loved ones were shot in an act of religious terrorism—provide additional weight for favoring Plaintiffs' choice of their home forum for this litigation.

### I. *Plaintiff's Choice of Forum under Koster and Gilbert*

In 1947, the Supreme Court decided the companion cases *Koster,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), and *Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In these two cases, the Court laid out the approach to *forum non conveniens* that is still followed in federal courts today.[2] *See, e.g., Piper Aircraft Co.,* 454 U.S. at 241, 102 S.Ct. 252; *Scottish Air Int'l,* 81 F.3d at 1232. In *Gilbert,* which involved a plaintiff who brought suit outside his home forum, *see* 330 U.S. at 502, 67 S.Ct. 839, the Court set forth a balancing test of private and public interests to guide courts' discretion in determining whether a more convenient forum exists.

**2.** As the Supreme Court has noted, the enactment of 28 U.S.C. § 1404 (1998), which controls interstate transfers of cases in federal courts, had the effect of limiting *forum non conveniens* analyses to cases such as this one

where the alternative forum is the court of another country. *See American Dredging Co. v. Miller,* 510 U.S. 443, 449 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).

*See id.* at 508–09, 67 S.Ct. 839. While *Gilbert* acknowledged that "the plaintiff's choice of forum should rarely be disturbed," "unless the balance [of factors] is strongly in favor of the defendant," *id.* at 508, 67 S.Ct. 839, *Koster,* which involved a plaintiff who had chosen to sue in his home forum, more explicitly stated that:

> Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems. In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.

330 U.S. at 524, 67 S.Ct. 828. Thus, *Koster* is "a consistent, pragmatic application of *Gilbert,*" *Alcoa,* 654 F.2d at 152, in the home forum context.

■ The Supreme Court has recognized that a district court may, in the exercise of its sound discretion, dismiss a case "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish .... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft,* 454 U.S. at 255 & n. 23, 102 S.Ct. 252. Although a citizen's choice of forum is not dispositive for the purposes of *forum non conveniens,* a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. *See id.*[3] Here, the district court did not accord such deference, or even mention *Koster,* in its application of the *Gilbert* private and public interest factors. This omission and consequent failure to grant Plaintiff's choice of an American forum significant deference was unsound.

■ In this case, Plaintiffs argue— and we agree—that their "home forum" as American citizens is a United States court, such as the courts of the Southern District of New York.[4] Under the standard articulated in *Gilbert* and *Koster*[5], Plaintiffs' decision to sue in New York should not be disturbed unless the balance of factors is

3. We held in *Alcoa* that the American citizenship of a plaintiff does not justify creating a special rule in *forum non conveniens* cases, and that the *Gilbert* standard is the proper standard to apply. 654 F.2d at 159. *Piper Aircraft,* however, establishes that *Koster* retains its vitality in the balancing of conveniences required under *Gilbert.* Our holding today does not contravene our holding in *Alcoa,* but rather follows *Piper Aircraft* 's dictate that a heightened deference should be given in the balancing of conveniences to an American citizen's choice of his or her home forum.

4. The district court noted in a footnote to its decision that Plaintiffs were not citizens of New York and that the presumption in favor of their choice of the Southern District of New York was therefore weakened. Although the district court did not rely heavily on this

fact in concluding that Egypt was the better forum, we find that the states where Plaintiffs reside are not relevant to the *forum non conveniens* analysis in this case. *See Reid–Walen v. Hansen,* 933 F.2d 1390, 1394 (8th Cir.1991) (in a *forum non conveniens* case involving a foreign court, "the 'home forum' for the plaintiff is any federal district in the United States, not the particular district where the plaintiff lives.").

5. The *Koster* criterion regarding the administrative and legal problems of the chosen court has no application here. Although the district court noted that the Southern District of New York is "heavily overburdened," the recent filling of all judicial vacancies and the resulting full complement of judges for the District makes this concern of little or no present significance.

strongly in favor of IHC. *See Gilbert*, 330 U.S. at 508, 67 S.Ct. 839. We conclude that IHC has not met its burden of showing that the aggregate of relevant factors weighs heavily on the side of dismissal: IHC is a corporate defendant with its principal place of business in New York and is being sued for a relatively simple tort violation. Plaintiffs, in contrast, are ordinary American citizens for whom litigating in Egypt presents an obvious and significant inconvenience, especially considering their adverse experience with that country to date. This is not a case where the plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts. *See Reid–Walen*, 933 F.2d at 1395 (courts partially discount citizenship when plaintiff does extensive foreign business); *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449–50 (9th Cir.1990) (same) (citing *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*, 556 F.2d 975, 978 (9th Cir.1977)).

Under the circumstances presented here, we can see no reason to make an exception to the presumption that "a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Koster*, 330 U.S. at 524, 67 S.Ct. 828; *see Gilbert*, 330 U.S. at 508, 67 S.Ct. 839.

Indeed, the district court, in its analysis of the private interest factors under *Gilbert*, concluded that the degree of inconvenience to IHC of litigating in the United States did not offer a basis for dismissing the case. After considering IHC's arguments regarding its need to implead Egypt as a third party, the availability of witnesses and evidence, the cost of obtaining depositions, and the possibility of a jury view in Egypt, the district court found that these factors "d[id] not strongly favor" the Egyptian forum. *See Guidi v. Inter–Continental Hotels Corp.*, 1997 WL 411469, at *3 (S.D.N.Y. 1997). IHC therefore did not carry its burden under *Gilbert* and *Koster*

to demonstrate that the balance of conveniences tipped strongly in its favor.

In the balancing of conveniences, we believe that the substantial and unusual emotional burden on Plaintiffs if they were required to travel to Egypt provides additional support for keeping the case in their chosen forum of New York.

Plaintiffs are atypical in that they are either the widows or the victim of a murderous act directed specifically against foreigners. Understandably, they are strongly adverse to litigating in a country where foreigners have been the target of hostile attacks, and have concerns for their own safety if required to travel there to bring their suit. Plaintiffs have supplied us with ample evidence of terrorist attacks occurring after the events giving rise to their action—including the subsequent killing of nine foreign tourists by the very man who attacked Plaintiffs—which give credence to Plaintiffs' uncertainty as to the safety of American visitors to Egypt insofar as fear of religious extremism is concerned.

In its *forum non conveniens* analysis, the district court did not even mention, much less give any weight to, the emotional burden faced by Plaintiffs if the case were to be heard in Egypt. In the subsequent Fed.R.Civ.P. 60(b) motion filed by Plaintiffs on this specific point, the district court affirmed its decision to dismiss the case in favor of the Egyptian forum and rejected the argument that Plaintiffs' concerns tilted the balance in favor of keeping the case in New York. For the purposes of *forum non conveniens*, however, "the ultimate inquiry is where trial will best serve the convenience of the parties *and the ends of justice.*" *Koster*, 330 U.S. at 527, 67 S.Ct. 828 (emphasis added); *see also Maganlal*, 942 F.2d at 167. We believe that justice is best served in this case by acknowledging the unique and heavy burden placed on Plaintiffs if they are required to litigate in Egypt. In balancing the interests at stake for the purposes of *forum non conveniens*, the district court should have taken into account the unusual

circumstances of Plaintiffs that weigh strongly in favor of the New York forum.

Because the district court gave inadequate significance to Plaintiffs' choice of forum as American citizens and failed to consider Plaintiffs' emotional burden of having to travel to Egypt for trial in its balancing, we find that its determination that Egypt was the better forum for this litigation was erroneous. Plaintiffs' decision to bring their suit in New York rather than in a foreign country should not be disturbed.

## II. *The Related Litigation*

In its weighing of the *Gilbert* public interest factors to determine the best forum for this case, the district court stated that the strongest public interest factor in favor of the Egyptian forum was the related litigation pending there at the time of its decision. The district court found that because the families of two other hotel guests who were killed by Farahat had brought suit in Egypt, although not against IHC, it would be most efficient if Plaintiffs' claims were heard in Egypt as well. To support its finding, the district court cited several cases based on 28 U.S.C. § 1404(a) which hold that related litigation in the transferee forum weighs heavily in favor of transfer.

■ The district court's reliance on 28 U.S.C. § 1404(a), which controls the transfer of cases among the federal courts within the United States, was not correct. As the Supreme Court recognized in *Piper Aircraft*, " § 1404(a) transfers are different than dismissals on the ground of *forum non conveniens*. ... District courts [a]re given more discretion to transfer under § 1404(a) ... [because] [t]he statute was designed as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." 454 U.S. at 253–54, 102 S.Ct. 252 (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 613, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). When, as here, the alternative forum is the court of a foreign country, the law of § 1404(a) has

no application because "the differences between trial in an American court and a foreign court will almost inevitably be greater than those between trial in two federal courts in the United States." *Nalls v. Rolls–Royce Ltd.,* 702 F.2d 255, 261 (D.C.Cir.1983).

■ The existence of related litigation, while of major significance in § 1404(a) cases, is not listed as a relevant factor in the *forum non conveniens* analysis laid out in *Gilbert.* 330 U.S. 508–09, 67 S.Ct. 839. Moreover, we can find no case that gives such litigation the significance accorded by the district court here, when the parties in the related action are completely different from the parties at bar. In the two *forum non conveniens* cases cited by the district court to support its decision, the parties to the American and foreign actions were identical and there was the likelihood of "significant duplication of legal efforts on behalf of all the parties." *C–Cure Chem. Co. v. Secure Adhesives Corp.,* 571 F.Supp. 808, 822 (W.D.N.Y.1983); *see also Ocean Shelf Trading, Inc. v. Flota Mercante Grancolombiana S.A.,* 638 F.Supp. 249, 253 (S.D.N.Y.1986). The private interests of the litigants—relevant under *Gilbert*— were therefore implicated in these cases in a manner not present here. We are not persuaded that such cases, in the absence of more apposite authority, require us to uphold the reasoning of the district court that Plaintiffs' case would be more efficiently heard in Egypt.

Although we are unwilling to say that the existence of related litigation in another country should never be considered for the purposes of *forum non conveniens,* we conclude that it was unsound for the district court to rely on § 1404(a) in giving the Egyptian litigation such decisive weight in this case.

### CONCLUSION

For the foregoing reasons, we find that the district court abused its discretion in deciding that Egypt was the better forum

for this litigation. We therefore reverse its dismissal and return the case to the Southern District of New York.