PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARY DIFEDERICO, individually
and as personal representative of
the estate of Albert DiFederico;
NICHOLAS DIFEDERICO, Individually;
ERICK DIFEDERICO, Individually;
GREG DIFEDERICO, Individually,

     *Plaintiffs-Appellants,*

        v.

MARRIOTT INTERNATIONAL,
INCORPORATED,

     *Defendant-Appellee.*

No. 12-1635

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Roger W. Titus, District Judge.
(8:11-cv-01508-RWT)

Argued: March 21, 2013

Decided: May 1, 2013

Before GREGORY and THACKER, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

---

Reversed and remanded by published opinion. Judge Gregory
wrote the opinion, in which Judge Thacker and Senior Judge
Hamilton joined.

---

**COUNSEL**

**ARGUED:** Andrew C. Hall, HALL, LAMB & HALL, PA, Miami, Florida, for Appellants. Paul K. Leary, Jr., COZEN O'CONNOR, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Matthew P. Leto, HALL, LAMB & HALL, PA, Miami, Florida, for Appellants. Sara Anderson Frey, COZEN O'CONNOR, Philadelphia, Pennsylvania, for Appellee.

---

**OPINION**

GREGORY, Circuit Judge:

Albert DiFederico, a former naval commander, was serving as a civilian contractor for the State Department in Pakistan when he was killed in a terrorist attack on the Marriott Islamabad Hotel. His widow, Mary DiFederico, and their three sons, brought this wrongful death action and survivorship claim alleging that Marriott International ("Marriott") was liable for its failure to adequately secure its franchise hotel. The DiFedericos brought their suit in the forum of Marriott's principal place of business, the District of Maryland. The district court granted Marriott's motion to dismiss on the basis of *forum non conveniens*, finding that Pakistan was an available, adequate, and far more convenient forum to hear the case. We reverse and remand for further proceedings.

I.

At 7:54 p.m. on September 20, 2008, a large dump truck containing over 1,000 pounds of explosives, artillery shells, mortar bombs, and shrapnel tried unsuccessfully to ram through the gate barrier of the Marriott Islamabad Hotel. Security personnel approached the truck, apparently mistaken that a traffic accident had occurred. At 7:55 p.m., the driver detonated an explosion inside the cab of the vehicle. The

explosive device malfunctioned, however, and only initiated a small fire contained in the cab of the truck. The security team did not warn hotel guests of any danger. Instead, personnel began searching for a fire extinguisher. At 8:02 p.m., the explosives in the back of the truck ignited, creating a large blast that engulfed the hotel in fire. The blast and resulting fire killed 56 people—including Albert DiFederico—and injured at least 266 more.

The DiFedericos filed suit in June 2011. The wrongful death action in the amended complaint alleged that Marriott: (1) failed to notify or evacuate guests upon the first explosion; (2) failed to have proper measures in place to put out the fire at the security gate; (3) failed to adequately train and supervise security employees; (4) failed to provide adequate fire safety devices; (5) failed to implement additional security measures concomitant with the then-current threat in Pakistan; and (6) fell below the standard of care in providing for the safety of its hotel guests. The complaint also set forth a survivorship claim and a claim for vicarious liability based on a negligent security theory.

Marriott operates and franchises over 3,000 hotels and resorts in 67 different countries. The Marriott Islamabad was a franchise hotel owned and operated by Hashwani Hotels Limited ("Hashwani"), a public limited company organized under the laws of Pakistan. The DiFedericos chose not to sue Hashwani. Instead, the DiFedericos allege that Marriott "controlled all aspects of anti-terrorism security at the hotel." While Hashwani contracted with a security company to handle security work, the hotel complied with security standards and protocols set forth by Marriott. For instance, in 1993, Marriott hired Alan Orlob to form an international crisis management team that assessed risk and prescribed security measures and procedures for all Marriott branded hotels. Under Orlob's direction, Marriott instituted a multi-tiered threat level system, installed security equipment, and sent hotel security officers to advanced training programs developed by

Marriott. Orlob explained in an article he authored that Marriott's comprehensive approach to security is "all . . . directed out of Marriott's corporate security offices. Instead of requiring general managers to make risk assessments and implement appropriate countermeasures without support, Marriott provides professional analysis and direction."

On September 19, 2011, Marriott moved to dismiss based on the doctrine of *forum non conveniens*. In granting the motion, the district court first found that although the statute of limitations might bar the DiFedericos' claim in Pakistan, it posed no bar to dismissal because the DiFedericos were responsible for a "tactical decision" not to litigate within the statute of limitations in Pakistan. The court then found that Pakistan provided an adequate forum for adjudication, relying in large part on an affidavit from Marriott's expert witness, an experienced Pakistani attorney. Finally, the court weighed the applicable public and private interest factors, and found almost all factors weighed heavily in favor of dismissal.

The DiFedericos timely filed an appeal, of which we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

## A.

We review a district court's decision to dismiss a case pursuant to the doctrine of *forum non conveniens* for abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). A district court's *forum non conveniens* determination may amount to an abuse of discretion if "it failed to consider a material factor or clearly erred in evaluating the factors before it, or did not hold the defendants to their burden of persuasion on all elements of the . . . analysis." *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010) (internal quotations omitted).

When considering a motion to dismiss on *forum non conveniens* grounds, a court must determine that the alternative forum is available to the plaintiff, that the alternative forum is adequate, and that the alternative forum is more convenient in light of the public and private interests involved. *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011). The defendant bears the burden of proving the adequacy, availability and overall convenience of the alternative forum. *Galustian*, 591 F.3d at 731.

### B.

The DiFedericos argue that the district court erred when it decided the Pakistani forum was available even though the statute of limitations had run on their claims in Pakistan. If the statute of limitations has expired in the alternative forum, the forum is typically not "available" for purposes of the *forum non conveniens* inquiry. *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202 (4th Cir. 2009) (citing *Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 316 (4th Cir. 1984)) (finding dismissal improper because defendant did not meet its "heavy burden of showing for each individual action that no statute of limitations in the [alternative forum] renders that forum ineligible . . .").

Here, Pakistan's Limitation Act of 1908 prescribes a one-year statute of limitations for all claims by executors, administrators or representatives brought under the Fatal Accidents Act of 1855. The Limitation Act, Act No. IX of 1908. Marriott has stated that it will waive all statute of limitations defenses if the case is tried in Pakistan. However, the Limitation Act appears to establish that the statute of limitations is a mandatory, self-acting provision that Marriott cannot waive as an affirmative defense.[1]

---

[1]The relevant language in the Limitation Act states, "every suit instituted . . . after the period of limitation prescribed . . . shall be dismissed although limitation has not been set up as a defence." The Limitation Act, Act No. IX of 1908.

In its brief, Marriott argues that "a reasonable interpretation" of the Limitation Act is that the limitation period does not begin until Marriott submits to the jurisdiction of Pakistan. However, Marriott does not provide any evidence of the viability of this interpretation. While Marriott produced an affidavit from an expert on Pakistani law to substantiate its argument that the DiFedericos have access to a remedy in Pakistan and that the Pakistani courts will enforce a judgment, the expert provided no opinion on the bearing of the Pakistani statute of limitations on this case. Marriott's proffer of a "reasonable interpretation" of Pakistani law does not satisfy its heavy burden of showing that there is no statute of limitations issue that would bar litigation.[2]

While an expired statute of limitations is usually dispositive in a *forum non conveniens* analysis, we have recognized an exception where it can be shown the plaintiff made a deliberate and tactical decision to run the statute of limitations for the purpose of avoiding dismissal in her preferred forum. *Compania Naviera*, 569 F.3d at 202-03. After acknowledging the DiFedericos may not be able to pursue their case in Pakistan, the district court determined that the DiFedericos had made a strategic decision to avoid trying the case in Pakistan, and concluded that the *Compania Naviera* exception "clearly applies in this case." *DiFederico v. Marriott Int'l, Inc.*, No. 8:11-cv-1508, at *6-7 (D. Md. Apr. 25, 2012).

Courts cannot invoke the *Compania Naviera* exception without evidence establishing that the plaintiff deliberately maneuvered to avoid trying the case in the alternative forum. *Compania Naviera*, 569 F.3d at 202-03; *see also Veba-*

---

[2]Courts have often found that a defendant cannot waive a statute of limitations defense in an alternative forum because of the mandatory application of the statute of limitations under certain foreign law. Joel H. Samuels, *When is an Alternative Forum Available? Rethinking the Forum Non Conveniens Analysis*, 85 Ind. L.J. 1059, 1087-89 (2010) (collecting cases and explaining that "courts should be certain that the statute of limitations can indeed be waived under the law of the [alternative forum]").

*Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1248 & n.10 (5th Cir. 1983) (explaining that dismissal where the statute of limitations has run would be "exceedingly harsh" and carving out an exception only where the plaintiff has made a "deliberate choice" to force the case into an inconvenient forum). This conforms with the Supreme Court's foundational explanation of the *forum non conveniens* doctrine that a plaintiff should not be allowed to "'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). For instance, in *Compania Naviera*, counsel for the plaintiff "acknowledged candidly to the district court" that it had made a "reasoned decision" to let the statute of limitations run. 569 F.3d at 202-03. It was this acknowledgement that allowed the district court to conclude, and the Fourth Circuit to affirm, that the plaintiff had "knowingly and purposefully opted to miss the deadline for filing their claims in [China]." *Id.* at 203.[3]

Unlike in *Compania Naviera*, the district court here failed to point to any evidence substantiating its determination that the DiFedericos made a deliberate and tactical decision to let the statute of limitations run in Pakistan to avoid dismissal. The court made only a conclusory statement in its opinion that "the fact remains that the Plaintiffs decided not to litigate in Pakistan" because of their assessment they would not benefit in doing so. When the DiFedericos noted during the hearing that Marriott could not waive its statute of limitations defense and that dismissal in a Pakistani court would be automatic, the court did not ask a single question, allowing the DiFedericos to proceed to the next topic. Nor did Marriott allege that the DiFedericos had been purposefully dilatory or otherwise

---

[3]It is also notable that the defendant in *Compania Naviera* provided affidavits, copies of Chinese statutes, and examples of case law illustrating that the Chinese courts would likely overlook the statute of limitations bar if Plaintiffs brought the case in China after dismissal in the United States. *Compania Naviera*, 569 F.3d at 202.

respond to the argument on rebuttal. A review of the briefs, the record, and the transcript of the hearing before the district court reveals nothing about the DiFedericos' motives.

We cannot credit the district court's conclusion on this issue if neither the court nor the record provides support for that conclusion. We hold that the district court abused its discretion in applying the *Compania Naviera* exception to this case and that Marriott failed to carry its burden of establishing Pakistan as an available forum.

## C.

### i.

Before reviewing the district court's analysis of the public and private factors relevant to a *forum non conveniens* analysis, we must establish the appropriate level of deference owing to the DiFedericos' choice of forum.

A defendant seeking dismissal against a non-citizen plaintiff must make a showing that the "relevant public and private interests *strongly favor* a specific, adequate, and available alternative forum." *Tang*, 656 F.3d at 246 (emphasis added). But, Supreme Court precedent commands that a citizen plaintiff's choice of forum is entitled to even greater deference when the plaintiff chooses her "home forum."[4] *Piper Aircraft*, 454 U.S. at 255-56. A citizen plaintiff's choice is presumptively convenient, *id.*, and should be overridden only when the defendant "establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).[5] As long as there is a "real showing of con-

---

[4]When the alternative forum under consideration is foreign, "home forum" refers to any federal district in the United States. *Adelson v. Hananel*, 510 F.3d 43, 53 (1st Cir. 2007).

[5]In *Koster*, the Court noted that dismissal under *forum non conveniens* where a citizen plaintiff has chosen his home forum may also be appropri-

venience by a plaintiff who has sued in his home forum [it will] normally outweigh the inconvenience the defendant may have shown." *Id.*

Courts considering a motion to dismiss under *forum non covneniens* against a citizen plaintiff choosing her home forum must apply this increased deference in their analysis. *See, e.g.*, *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006) (reversing district court, in part, because court "did not apply the deference required for a forum choice made by a U.S. plaintiff . . ."); *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (explaining that the "presumption in favor of the plaintiff's initial forum choice . . . is at its strongest when the plaintiffs are citizens, residents, or corporations of this country"); *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 (2d Cir. 2000) (reversing because the district court did not recognize that the plaintiff is "entitled to greater deference" when choosing her home forum); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991) ("Citizens should rarely be denied access to courts of the United States."); *Founding Church of Scientology of Washington, D.C. v. Verlag*, 536 F.2d 429, 435 (D.C. Cir. 1976) ("Courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country."). In spite of the overwhelming authority establishing increased deference, the district court here failed to clearly acknowledge the principle, much less analyze the case accordingly.

Marriott tries to place the district court's analysis in the best possible light, stating that "[n]othing in the District

---

ate upon a "clear showing of facts which . . . make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." 330 U.S. at 524. This alternate basis for dismissal is not at issue in this case.

Court's opinion indicates that it gave less deference to the DiFedericos' choice of forum." But, this cannot be our metric of analysis. We must ascertain whether there is affirmative evidence that the district court did in fact consider this heightened standard when it conducted its analysis. *See SME Racks*, 382 F.3d at 1101-03 (requiring "positive evidence of unusually extreme circumstances" to dismiss on the basis of *forum non conveniens* where a citizen plaintiff has brought suit in her home forum and reversing the district court's dismissal because there was "no hint from the opinion" that this proper presumption was considered). The district court's failure to do so here was an abuse of discretion.

ii.

Having found the DiFedericos are entitled to heightened deference in their choice of forum, we may now begin our inquiry into the district court's balancing of public and private factors.[6] While these factors guide the analysis of a motion to dismiss under *forum non conveniens*, the "ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster*, 330 U.S. at 527. The DiFedericos' argument for convenience and justice begins with avoid-

---

[6]The Supreme Court has enumerated the private factors to consider, as follows: "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (quoting *Gulf Oil*, 330 U.S. at 508-09). Public interest factors include: "(1) Administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; and (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or in application of foreign law; (5) and the unfairness of burdening citizens in an unrelated forum with jury duty.." *Piper Aircraft*, 454 U.S. at 241, n. 6.

ing the fear and emotional trauma associated with pursuing their case in Pakistan.[7]

In *Guidi*, the Second Circuit recognized the inconvenience of the emotional burden that plaintiffs would have to shoulder if they were forced to bring their case in Egypt where a terrorist attack on a hotel gave rise to the claims. 224 F.3d at 147. The court explained that the widows and victims of a "murderous act . . . are strongly adverse to litigating in a country where foreigners have been the target of hostile attacks, and have concerns for their own safety if required to travel there to bring their suit." *Id.* The *Guidi* plaintiffs provided evidence of ongoing terrorist activity in Egypt that substantiated their concern. *Id.*

We find *Guidi* analogous to this case and persuasive in its reasoning.[8] The DiFedericos have provided substantial evidence detailing the risks facing Americans who travel anywhere in Pakistan. For instance, the Department of State issued a travel warning on August 8, 2011, explaining that Pakistan is unsafe because "the presence of al-Qaida, Taliban elements, and indigenous militant sectarian groups pose[ ] a

---

[7]The district court analyzed fear and emotional trauma to the DiFedericos under adequacy of the alternative forum. Because the DiFedericos are witnesses in this case, it could fit within an analysis of the factor considering availability of witnesses or under the catch-all factor, "all other practical problems that make trial of a case easy, expeditious and inexpensive." *See American Dredging*, 510 U.S. at 448 (quoting *Gulf Oil*, 330 U.S. at 508-09). Here, we decline to categorize it within any one factor and instead treat it as a general consideration of convenience.

[8]Marriott attempts to distinguish *Guidi* by arguing that the gunman who perpetrated the attack in Egypt was still on the loose, and thus presented a more specific, more severe risk to the plaintiffs. But, Appellants point out that this is factually incorrect. The gunman had been captured and condemned to death at the time of the appeal. Brief of Appellee at 30, n. 22, *Guidi v. Inter-Cont'l Hotels Corp.*, No. 97-7973 (2d Cir. Nov. 2, 1999). As such, there is no basis to speculate that the Second Circuit held as it did because of a specified and immediate fear of the actual gunman involved in the crime.

potential danger to U.S. citizens throughout Pakistan." The advisory, which references nine separate terrorist attacks on U.S. citizens in the country since 2006, states that "terrorist groups continue to seek opportunities to attack locations where U.S. citizens and Westerners are known to congregate or visit, such as shopping areas, hotels, clubs and restaurants, places of worship, schools, or outdoor recreation events." Further, the DiFedericos point to data from the South Asia Terrorism Portal documenting nearly 12,000 terrorist-related deaths in Pakistan between 2003 and 2011.

The fear and emotional trauma involved in travel to Pakistan for a trial concerning such a politically charged event would give rise to a bevy of logistical concerns and expenses. The DiFedericos would either have to stay in the hotels, eat in the restaurants, and shop in the stores that the State Department identifies as present-day terrorist targets or incur great expense in avoiding them. If the DiFedericos followed the State Department's warnings, they would have to steer clear of facilities catering to Americans. As such, it would likely be necessary to hire someone to help them access basic amenities and navigate an unfamiliar cultural setting. Further, they may need to hire bodyguards for protection. It is indisputable that the DiFedericos are inconvenienced by these logistical complexities and expenses, let alone the fear and emotional trauma itself.

Marriott and the district court attempt to sidestep these concerns by suggesting "there would be no need for the [DiFedericos] to actually travel to Pakistan." *DiFederico*, No. 8:11-cv-1508, at *10. There are two problems with this reasoning. First, a civil litigant generally has a right of access to all judicial proceedings. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1066-67 (3d Cir. 1984); *see also Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 81 (1919) (establishing that the parties to a lawsuit have a right to be "present in person at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict"). Second, the

DiFedericos may be necessary witnesses on the question of damages. In a wrongful death case, it would be quite easy for a defendant to exploit Plaintiffs' inability to produce testimony regarding their relationship to the decedent. Technically, the trial may be able to go forward without the DiFedericos' personal attendance. But, Marriott provides no support for the claim that the DiFedericos' inability to attend trial in Pakistan would not place them at a distinct disadvantage.

Marriott relies on two out-of-circuit district court cases to argue that fear and emotional trauma should not figure into our analysis of convenience. *See Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069 (C.D. Cal. 2012) (dismissing negligence case stemming from a fatal air crash in Pakistan in spite of stated fear of travel to Pakistan); *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328 (S.D.N.Y. 2008) (rejecting argument that ongoing terrorist threat in Egypt makes it an inconvenient forum). *Harp* and *Niv* are distinguishable from this case. In *Harp*, the Plaintiff's fear had no relationship to the events giving rise to the claim. *See* 879 F. Supp. 2d at 1071. Further, the political undertones and resultant security threat are higher in this case concerning a high-profile terrorist attack that killed a government contractor than in a negligence suit regarding a plane crash. In *Niv*, none of the plaintiffs were American citizens and there was a third forum—Israel—available for trial of the case. 710 F. Supp. 2d at 335.

We conclude that it would be a perversion of justice to force a widow and her children to place themselves in the same risk-laden situation that led to the death of a family member. The DiFedericos are inconvenienced by the fear, emotional trauma, and associated logistical complexity that would afflict them if this case were dismissed and decided in Pakistan.

Our review of several of the applicable public and private factors provide additional support for our conclusion that the

district court abused its discretion in dismissing this case. First, the court mistakenly found that the location of the sources of proof heavily favors dismissal. The court credited Marriott's account that virtually all proof needed to try the case exists in Pakistan, including the incident scene, the location of the anti-terror perimeter, statements by Pakistani employees, Pakistani government documents, and records related to security protocol.

The DiFedericos argue persuasively, however, that their theory centers on Marriott's failure to properly control security in its franchise hotel. As such, essential sources of proof include testimony from Mr. Orlob, documents explaining the policies and procedures outlined by Mr. Orlob during his testimony to the U.S. Senate and as explained in an article he wrote on the subject, testimony from Marriott's corporate officers, and testimony from security experts regarding the adequacy of Marriott Islamabad's security measures. The DiFedericos declare that each of the witnesses they will utilize at trial are located in the United States. To the extent they wish to refer to the floor plan and layout of the hotel, they state that aerial photographs and other demonstrative evidence will suffice. Additionally, they explain that all sources of proof related to damages are solely located within the United States.

It is true, as Marriott argues, that the allegations in the DiFedericos' complaint include reference to *implementation* of the security plan. For instance, their wrongful death claim includes allegations that Marriott "fail[ed] to properly react at the time of the first explosion to notify guests to evacuate to fire proof areas in their rooms." Where implementation is concerned, it would appear unavoidable that the trial would necessitate testimony from certain witnesses who were at the hotel. Further, Count III of Appellants' complaint is a vicarious liability count alleging negligent security on the part of Marriott Islamabad's security personnel. Negligence claims

are typically fact-bound, and it appears likely that evidence from the scene would be important to resolution of this issue.

It cannot be overlooked, however, that the DiFedericos chose to sue Marriott, not Hashwani. Whatever theory they pursue requires they hold Marriott, an American-based company, accountable for the events that took place in a franchise hotel in Pakistan. At minimum, a major part of the DiFedericos' theory hinges on Marriott's oversight of security plans and procedures. This unmistakably shifts the center of the case towards the United States. While this factor may not weigh in favor of the DiFedericos, it certainly does not weigh "heavily in favor" of Marriott, as the district court concluded. *See DiFederico*, 8:11-cv-1508, at *12.

Next, the district court found that the availability of compulsory process for attendance of unwilling witnesses and the cost of bringing witnesses to court weigh in favor of Marriott. The district court failed to recognize that this factor should be given little weight in the overall balancing scheme when the defendant has not shown that any witness is actually unwilling to testify. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1231 (9th Cir. 2011); *Duha*, 448 F.3d at 877. To be clear, Marriott is not required to show that a particular witness is unwilling to testify. *Piper Aircraft*, 454 U.S. at 258. But, it must do more than simply point to categories of witnesses who are outside the court's control. *Carijano*, 643 F.3d at 1231 ("[Defendant] has not shown, nor does it even represent, that any witness is unwilling to testify. Instead it . . . identif[ies] categories of witnesses it intends to call who are outside of its control."). As the Supreme Court explained in *Gulf Oil*, the relevant consideration is the "availability of compulsory process for attendance of *unwilling* . . . witnesses." 330 U.S. at 508 (emphasis added). Here, Marriott made a generalized assertion that the court cannot compel Pakistani witnesses to give testimony, but failed to allege or offer proof that any witness would be "unwilling" to cooperate with a trial in the United States.

Next, the district court erred in finding there was no compelling "local interest in having localized controversies decided at home." *See American Dredging*, 510 U.S. at 448. We have noted that a defendant's residence deserves consideration in a *forum non conveniens* analysis. *Galustian*, 591 F.3d at 732; *see also Reid-Whalen*, 933 F.2d at 1400 (explaining that a "defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens"). Further, because the DiFedericos' central theory revolves around Marriott's coordination of security from its principal place of business, there is inherent convenience to bringing this case in its legal backyard.

We emphasize that this is not a case where the plaintiff is a corporation doing business abroad that should expect to litigate in foreign courts. *Id.* at 1395 (noting that "[w]hen an American corporation doing extensive foreign business brings an action for injury occurring in a foreign country, many courts have partially discounted the plaintiff's United States citizenship"); *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*, 556 F.2d 975, 978 (9th Cir. 1977) ("In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum . . . ."). Further, to the extent that Americans recognize and utilize the Marriott brand, Americans have a localized interest in resolving a dispute related to Marriott.

Of course, Pakistan has a strong interest in hearing this case, as well. As Marriott points out, this attack attracted international attention and was a major incident in Pakistan's ongoing battle with terrorism. And, the attack occurred in close proximity to the home of the Prime Minister, who was originally scheduled to dine at the Marriott before a last minute change of plans. But, while the district court recognized Pakistan's interest in the litigation, it gave short shrift to the

substantial arguments militating in favor of retaining jurisdiction.

The court also erred in finding that the difficulty in applying foreign law weighs in favor of dismissal. In a diversity case, a district court applies the conflict-of-law rules of the state where it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Maryland, the principle of *lex loci delicti* applies for all tort claims. *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999). This means the applicable law is the law of "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Id.* (quoting Restatement (First) of Conflict of Laws § 377 (1934)).

Assuming without deciding that Pakistan's laws should apply to this case, the district court overstated the associated hardship. The court quoted Marriott's argument that applying Pakistan's laws would present a "daunting, burdensome task." But, "[f]ederal courts are quite capable of applying foreign law when required to do so, and a district court's application of foreign law is a factual matter reviewable on appeal." *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 345 (8th Cir. 1983) (citing *Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 67-68 (2d Cir. 1981) ("the need to apply foreign law is not in itself a reason to apply the doctrine of *forum non conveniens* . . . and we must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform.").

While applying foreign law might pose a burden, it is not enough to push the balance strongly in favor of Marriott in the overall inquiry. *Id.* at 68. Here, the district court provided no reason why Pakistani law on this topic creates any particular difficulty in interpretation. The court noted that it would have to interpret "(1) decisions from Islamabad's High Court and Pakistan Supreme Court, (2) Pakistani statutes . . . , and (3) local ordinances." *DiFederico*, No. 8:11-cv-1508, at *15. This is precisely the kind of work American judges perform on a

daily basis. The district court's "apprehension appears to be predicated wholly on conjecture," and provides little reason for granting a dismissal on the basis of *forum non conveniens*. *See Mobil Tankers Co., S. A. v. Mene Grande Oil Co.*, 363 F.2d 611, 615 (3d Cir. 1966). Indeed, other courts have not balked at the task. *See, e.g.*, *United States v. Mitchell*, 985 F.2d 1275, 1279-84 (4th Cir. 1993) (discussing and reviewing district court's interpretation of the Pakistani Constitution, Import and Export Act, and Punjab Wildlife Act); *Werkley v. Koninklijke Luchtvaart Maatschappij N.V., Royal Dutch Airlines Holland*, 110 F. Supp. 746, 747 (S.D.N.Y. 1952) (interpreting the Fatal Accidents Act of 1855); *see also* Matthew J. Wilson, *Demystifying the Determination of Foreign Law in U.S. Courts: Opening the Door to A Greater Global Understanding*, 46 Wake Forest L. Rev. 887, 899, 906 (2011) (explaining that "the reasons underlying judicial aversion to foreign law are overblown," discussing the "litany of resources, techniques, and tools to draw upon," and concluding that "the determination of foreign law does not stray too far from the process of determining domestic law").

Finally, the district court erred in concluding that it "would be burdensome to have members of a jury hear evidence regarding a terrorist attack that has little to do with this forum other than the fact that Marriott's headquarters is in Maryland." *DiFederico*, No. 8:11-cv-1508, at *18. This is not a case where neither the parties nor the event has any relationship to the community where the trial would occur. *See Gulf Oil*, 330 U.S. at 508-09. This is a case of American citizens suing an American corporation. The defendant is a corporate member and employer within the community where this case would be tried. *See Prevision Integral de Servicios Funerarios, S.A. v. Kraft*, 94 F. Supp. 2d 771, 782 (W.D. Tex. 2000) (finding that membership in the community automatically relates the controversy to the community). A Maryland jury has a strong interest in deciding this case.

## III.

A proper *forum non conveniens* inquiry in this case, applying the heightened deference owing to a citizen plaintiff seeking suit in her home forum, does not establish "such oppressiveness and vexation to [Marriott] as to be out of all proportion to [the DiFedericos'] convenience, which may be shown to be slight or nonexistent." *See Koster*, 330 U.S. at 524. We therefore reverse and remand for further proceedings.

*REVERSED AND REMANDED*