**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-1882**

───────────

TIBER CREEK PARTNERS, LLC,

        Plaintiff - Appellant,

     v.

ELLUME USA LLC; ELLUME LTD ACN 141767 660; DR. SEAN PARSONS, individually and in his capacity as officer and director of Ellume USA LLC and Ellume Ltd ACN 141767 660,

        Defendants - Appellees,

     and

JOHN DOES 1-10,

        Defendants.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Michael Stefan Nachmanoff, District Judge.  (1:23-cv-00148-MSN-JFA; 1:23-cv-00292-MSN-JFA)

───────────

Argued:  September 25, 2024                 Decided:  July 16, 2025

───────────

Before WILKINSON, RICHARDSON, and RUSHING, Circuit Judges.

───────────

Affirmed by unpublished opinion.  Judge Rushing wrote the majority opinion, in which Judge Wilkinson joined.  Judge Richardson wrote a dissenting opinion.

───────────

**ARGUED:** Jason P. Gosselin, FAEGRE DRINKER BIDDLER & REATH, Philadelphia, Pennsylvania. for Appellant. Stephen Modica Rees, COVINGTON & BURLING, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Dawn B. Williams, FAEGRE DRINKER BIDDLE & REATH LLP, Washington, D.C., for Appellant. Andrew Soukup, Kevin B. Collins, COVINGTON & BURLING LLP, Washington, D.C., for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

Medical device company Ellume Ltd. declared bankruptcy under Australian law. Tiber Creek Partners, LLC—an American company—then sued Ellume Ltd. and its subsidiary, Ellume USA, LLC, in federal district court to recover unpaid consulting fees. The district court dismissed Tiber Creek's claims without prejudice under the doctrine of *forum non conveniens*, finding them better suited for litigation in Australia. Because the district court did not abuse its discretion, we affirm.

I.

Tiber Creek is a consulting firm in Virginia. Ellume Ltd. was an Australian company that developed diagnostic healthcare products. Ellume Ltd. did business in the United States through Ellume USA, a Delaware company with a manufacturing facility in Maryland. These lawsuits arise from Tiber Creek's work for the Ellume entities during the COVID-19 pandemic.

The companies' relationship began around 2014, when Ellume Ltd. sought funding for a research initiative. Tiber Creek agreed to provide advice to Ellume Ltd. pursuant to the 2014 Services Agreement and signed an accompanying non-disclosure agreement. The 2014 NDA provided that "the parties to this document irrevocably and unconditionally submit to the exclusive jurisdiction" of Australian courts. J.A. 75. The project concluded in less than a year.

Tiber Creek reconnected with Ellume Ltd. in 2020. In March, Tiber Creek's principal member, John Clerici, spoke with Sean Parsons, the chief executive officer of both Ellume Ltd. and Ellume USA (which was formed in 2019). Parsons expressed an

3

interest in expanding the company's COVID-19 testing platform, and Tiber Creek agreed to assist. Clerici and Parsons signed the 2020 Services Agreement in May. The 2020 Services Agreement referred to "Ellume" generally, without specifying whether it bound the parent or subsidiary company. It also referenced "a Nondisclosure Agreement between Tiber Creek Partners and Ellume," which governed all information provided in connection with the 2020 Services Agreement. J.A. 81–82.

With Tiber Creek's help, Ellume USA secured funding from the United States government to supply diagnostic tests. These awards allegedly included $30 million from the National Institutes of Health Rapid Acceleration of Diagnostics initiative in October 2020 and nearly $232 million from the Department of Defense, in coordination with the Department of Health and Human Services, in February 2021.

Ellume USA allegedly ran into financial hardship in the fall of 2021. By March 2022, Tiber Creek claims it was owed $4.7 million in consulting fees. Accordingly, in August 2022, Ellume Ltd. and Tiber Creek entered a Deed of Variation, which modified the 2020 Services Agreement. Under the Deed of Variation, Ellume Ltd. would make four cash payments to Tiber Creek totaling $3,666,666. Any remaining amount due would then be paid in unregistered securities, as Ellume Ltd. represented that it had plans to go public. Tiber Creek and Ellume Ltd. agreed to submit to the non-exclusive jurisdiction of Australian courts for all proceedings related to the Deed, which specified that it was governed by Australian law.

Around the same time, Ellume Ltd. and Tiber Creek also executed the 2022 Services Agreement. That contract contemplated the end of the 2020 Services Agreement,

4

providing that "[u]pon the execution of this Agreement, the Initial Agreement will terminate immediately." J.A. 108. Like the Deed of Variation, the 2022 Services Agreement specified that it was governed by Australian law and included an agreement to submit to the non-exclusive jurisdiction of Australian courts.

A few weeks later, Ellume Ltd. entered voluntary administration in Australia, which is the equivalent of Chapter 11 bankruptcy proceedings in the United States. Tiber Creek submitted proofs of debt in the Australian proceedings, claiming that Ellume Ltd. owed Tiber Creek around $9 million in unpaid consulting fees arising under the 2020 Services Agreement, Deed of Variation, and 2022 Services Agreement.

In December 2022, Ellume Ltd.'s creditors voted to sell the company to a third-party, Hough Consolidated Pty. Ltd. Ellume Ltd. and Hough Consolidated entered a Deed of Company Arrangement (DOCA), which explained how Ellume Ltd.'s creditors would be paid if the sale was consummated but also warned that Ellume Ltd. could be liquidated if the deal fell through. The DOCA further stated that its terms bound creditors while operational and forbade them to "begin, revive, continue or take any further steps in any action, suit, mediation or proceeding against [Ellume Ltd.] or in relation to any of its property." J.A. 448.

Tiber Creek subsequently filed two lawsuits in the Eastern District of Virginia. First, it sued Ellume USA for breach of contract in February 2023 (*Ellume I*). In that action, Tiber Creek sought damages in the amount of overdue consulting fees plus interest and an accounting to determine the exact amount owed. Tiber Creek also sought a declaratory judgment that Ellume USA—not Ellume Ltd.—owed the unpaid fees pursuant to the 2020

Services Agreement and that any payment Tiber Creek might recover from Ellume Ltd. in the Australian voluntary administration could reduce the balance owed but would not preclude the claims against Ellume USA.

Second, Tiber Creek sued Ellume USA, Ellume Ltd., Parsons, and "John Doe" defendants in March 2023 (*Ellume II*). That complaint alleged the defendants procured the Deed of Variation by fraud in order to transfer Ellume USA's debt to Ellume Ltd., which they knew was approaching insolvency. Tiber Creek requested a declaration that the Deed of Variation was void and sought compensatory and punitive damages against Parsons.

The parties agreed to consolidate the two actions under Federal Rule of Civil Procedure 42(a)(2). The defendants in both cases moved to dismiss on various grounds, including *forum non conveniens*, arguing that the suits should be litigated in Australia. The district court scheduled a combined hearing on the dismissal motions.

At the hearing, the parties agreed that Australia was an adequate and available forum and disagreed only about whether it was more convenient than the Eastern District of Virginia. The defendants argued that the cases belonged in Australia because, among other reasons, most documents and all witnesses except Clerici were in Australia, including material nonparty witnesses such as individuals who negotiated, drafted, and signed the Deed of Variation and 2022 Services Agreement, former Ellume Ltd. officers, and the administrators of the voluntary administration. The defendants observed that Tiber Creek had submitted claims and was recognized as a creditor of Ellume Ltd. in the voluntary administration, which suggested that Australia was not inconvenient for Tiber Creek and that the DOCA barred Tiber Creek from initiating other actions to enforce its debt. The

6

defendants further noted that, throughout the parties' relationship, Tiber Creek had entered agreements consenting to jurisdiction in Australia, including the 2014 NDA (which the defendants claimed was incorporated into the 2020 Services Agreement), the Deed of Variation, and the 2022 Services Agreement. Lastly, the defendants argued that the 2020 Services Agreement—which formed the basis of *Ellume I*—bound Ellume Ltd., not Ellume USA, and was terminated by the 2022 Services Agreement in any event. In the defendants' view, Ellume USA was not a proper defendant because the 2020 Services Agreement "never mentioned Ellume USA" but "was directed to [Parsons in] Australia," and any doubt on that score "should be litigated in Australia." J.A. 751.

Tiber Creek, for its part, urged the court to consider each case separately because "the arguments in favor of *forum non conveniens*" made "more sense when we're talking about a case involving two Australian defendants" as in *Ellume II*, "than when we're talking about a case that involves two American entities," as in *Ellume I*. J.A. 755. Tiber Creek emphasized that a plaintiff's decision to file suit in its home forum is entitled to great weight and that, in *Ellume I*, "we have a Virginia entity suing in Virginia, a company that has its headquarters an hour from here." J.A. 756. Defending its decision to sue Ellume USA and not Ellume Ltd. in *Ellume I*, Tiber Creek acknowledged that no contract referenced Ellume USA but argued parol evidence would demonstrate that the 2020 Services Agreement bound Ellume USA to pay the consulting fees. Tiber Creek further noted that Ellume Ltd.'s own administrators had initially rejected its proof of debt on the ground that Ellume USA was the indebted party. In response to questioning from the court, Tiber Creek represented that, if this were a Chapter 11 bankruptcy in the United States, an

7

automatic stay would hinder its suits against Ellume USA and Ellume Ltd. because the

disputed contract question and claims of fraud would be channeled to the bankruptcy court

in the first instance. But Tiber Creek protested that the district court could not recognize

the Australian bankruptcy because the defendants had not pursued the mechanisms of

Chapter 15 of the Bankruptcy Code for cross-border insolvencies. Further, Tiber Creek

argued that the DOCA did not protect Ellume USA from parallel proceedings to collect the

debt, since it was not the company in voluntary administration. Finally, as to witnesses

and documents, Tiber Creek contended that the defendants could defend *Ellume I* with

witnesses they controlled and that, although "the arguments are a little bit different on

*Ellume* [*II*]," there had been no "true showing" that the defendants "wouldn't be able to

marshal the evidence they need to defend the case if they had to do it here." J.A. 759.

The district court granted the motions to dismiss both cases without prejudice on

*forum non conveniens* grounds. Ruling from the bench, the court explained:

> There really is no dispute, as the parties have conceded in their papers
> and this morning, that Australia is both available and adequate. So this really
> comes down to whether or not the defendants have demonstrated that it is
> more convenient to be in Australia, considering the public and the private
> interests of all of the parties, and I have considered these cases separately and
> appreciate that there are burdens, no matter what the Court decides; but,
> fundamentally, this is an Australian matter for Australia to decide, and it's
> clear that Tiber Creek anticipated that it might have to resolve matters in
> Australia, not only because of the forum-selection clauses and the [o]ther
> documents that are not dispositive, but are certainly a relevant consideration,
> but to the actual participation of Tiber Creek in the bankruptcy proceeding in
> Australia. And while I appreciate that Ellume USA is a corporation here, its
> head is, in fact, in Australia, and they're more than capable and have
> consented to resolving the matter in Australia, and I don't find that separating
> those out and having the litigation remain here in part and in Australia in part
> would be appropriate.

There's no doubt that the majority of witnesses are in Australia, that the documents are in Australia, that the ability of the defendants to be able to obtain pretrial witnesses and documents would be severely curtailed, even using the Hague Convention. The public factors also favor having this matter resolved in Australia. As we discussed, had this matter been a bankruptcy proceeding that began here, there's no doubt that the matter would have been stayed and efforts would have had to have been made to find exceptions to allow the litigation to go forward outside of the bankruptcy context. So with regard to all three factors -- availability, adequacy, convenience, considering the public and private factors considering each defendant separately -- I find that the motion should be granted and the case dismissed without prejudice, and the plaintiffs, of course, are well within their rights to continue the litigation in the bankruptcy court or to seek additional remedies through the courts in Australia.

J.A. 773–774.

On June 13, 2023, two weeks after the district court's ruling, the sale between Ellume Ltd. and Hough Consolidated fell through. The DOCA automatically terminated, and Ellume Ltd. entered liquidation proceedings in which Tiber Creek would receive nothing. Citing these "materially changed circumstances," Tiber Creek moved to amend the district court's judgment under Federal Rule of Civil Procedure 59(e) or 60(b). J.A. 777–778.

The district court denied Tiber Creek's motion. As the court explained, "newly discovered evidence" can justify relief under Rules 59(e) and 60(b), but that evidence must have existed at the time of the court's ruling; post-ruling developments are not a basis for reconsideration. *Tiber Creek Partners, LLC v. Ellume USA LLC*, Nos. 1:23-cv-0148, 1:23-cv-0292, 2023 WL 5987385, at *2 (E.D. Va. Aug. 1, 2023). And this development did not make the court's earlier ruling a "manifest injustice." *Id.* at *3. "[A]s with all bankruptcy-like proceedings," the court reasoned, "the termination of the voluntary administration

9

proceeding without payment to Tiber Creek was always a potential outcome." *Id.* Tiber Creek timely appealed.

## II.

## A.

We review a *forum non conveniens* dismissal for an abuse of discretion, mindful that "the district court's 'decision deserves substantial deference.'" *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). While Tiber Creek's arguments have some force, ultimately it has not shown that the district court abused its discretion.

A *forum non conveniens* dismissal must be based on a determination that a specific alternative forum is available, adequate, and "more convenient in light of the relevant public and private interests involved." *Id.* As previously noted, Tiber Creek does not contest that Australian courts are an available and adequate forum for these suits. It disputes only whether Australia is more convenient. Convenience considerations pertaining to the private interests of the litigants include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that

10

must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 509).

On appeal, Tiber Creek primarily contends that the district court failed to acknowledge the deference due its choice of forum. A plaintiff's chosen forum is presumptively convenient, and when a plaintiff sues in its home forum, that selection is entitled to "greater deference." *Id.* at 255. According to Tiber Creek, the record lacks "affirmative evidence that the district court did in fact consider this heightened standard when it conducted its analysis." *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 803 (4th Cir. 2013). We disagree. The district court expressly recognized that Tiber Creek's "choice of the forum" deserved "great weight" in the convenience analysis. J.A. 758. And contrary to Tiber Creek's argument, the district court did not defer to the *defendants'* preferred forum merely by acknowledging their argument that Ellume USA had consented to jurisdiction in Australia.

At root, Tiber Creek insists the district court did not give enough weight to its choice of its home forum and the local nature of *Ellume I*. Consistent with its approach in the district court, on appeal Tiber Creek focuses almost exclusively on *Ellume I*. To be sure, that action involves significant domestic interests. Tiber Creek alleged that a Virginia-based consulting firm helped secure around $260 million in funding from the United States government for a company doing business in the United States. Considered anew, we might give those interests more weight in the analysis. But the district court was

11

appropriately concerned about bifurcating *Ellume I* and *Ellume II* between two forums and creating parallel litigation about the same claims and defenses in two different countries.[1]

*See* J.A. 773 ("I don't find that separating those [cases] out and having the litigation remain here in part and in Australia in part would be appropriate."). *Ellume II* involves Australian defendants, documents, witnesses, and events, including allegedly wrongful conduct occurring in Australia. And both cases necessarily implicated the ongoing voluntary administration in Australia, where defendant Ellume Ltd. was in reorganization proceedings and plaintiff Tiber Creek was a creditor pursuing the very same debt at issue in these cases. In that sense, even if *Ellume I* and *Ellume II* remained in the Eastern District of Virginia, the parties' dispute would nevertheless be bifurcated between that forum and the Australian court. The district court's assessment on that score was not an abuse of discretion.[2]

---

[1] Tiber Creek cites *Hall v. Hall*, 138 S. Ct. 1118 (2018), for the position that *Ellume I* and *Ellume II* "retain[ed] their distinct identities despite consolidation." Opening Br. 22. That's true, as far as it goes. In *Hall*, the Supreme Court held that an action consolidated under Rule 42(a)(2) "retains its independent character *at least to the extent it is appealable when finally resolved*, regardless of any ongoing proceedings in the other cases." 138 S. Ct. at 1125 (emphasis added). However, the Court clarified that "[n]one" of its opinion "mean[t] that district courts may not consolidate cases for 'all purposes' in appropriate circumstances," explaining that "[d]istrict courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Id.* at 1131. Nothing in *Hall* undercuts the district court's authority to consider the relationship between these cases in its *forum non conveniens* analysis.

[2] For similar reasons, we are not persuaded by the dissent's perception that the district court considered only whether "Australia was better" and not whether "Virginia was unacceptable." *Infra*, at 22. As explained, the district court found that the witnesses and documents were in Australia, that litigating in Virginia would curtail discovery, and that allowing litigation about this debt to proceed in Virginia while the voluntary

12

Turning to Tiber Creek's other objections, we similarly find no reversible error. The district court determined it was "clear that Tiber Creek anticipated that it might have to resolve matters in Australia," in part because of "the forum-selection clauses and the [o]ther documents that are not dispositive, but are certainly a relevant consideration." J.A. 773. While Tiber Creek does not dispute that it anticipated having to litigate these matters with Ellume Ltd. in Australia, it disagrees that the forum selection clauses were relevant. According to Tiber Creek, the only relevant contract was the 2020 Services Agreement, which formed the basis for its breach of contract claim. That contract contains no forum selection clause and, in Tiber Creek's view, does not incorporate the 2014 NDA with its forum selection clause. But, of course, *Ellume II* concerns the Deed of Variation, which contains a clause in which Tiber Creek consents to the jurisdiction of Australian courts, as does the 2022 Services Agreement. The district court did not suggest that any of these documents *required* this matter to be litigated in Australia. And Tiber Creek identifies no error in the court considering these documents for the limited purpose of assessing whether Tiber Creek anticipated it would have to litigate these issues with Ellume Ltd. in Australian courts.

Tiber Creek next claims the district court erred in evaluating the availability of witnesses. The district court explained that "the majority of witnesses are in Australia," "the documents are in Australia," and the defendants' ability "to obtain pretrial witnesses

---

administration continued in Australia would be untenable. And because the district court correctly acknowledged the deference due Tiber Creek's choice of its home forum, we are not convinced that its use of the "more convenient" phrasing from our caselaw introduced a legal error. *See infra*, at 21.

and documents" in discovery would be frustrated if litigation proceeded in Virginia. J.A. 773–774. Tiber Creek faults the district court for not determining whether any witnesses in Australia would be unwilling to participate in discovery or trial; it claims that "an unavailable witness must also be an *unwilling* witness to be relevant to the *forum non conveniens* analysis." Opening Br. 37. That is incorrect. The "availability of compulsory process for attendance of unwilling [witnesses] *and* the cost of obtaining attendance of willing[] witnesses" are both "[i]mportant considerations" for the private interest analysis. *Gulf Oil*, 330 U.S. at 508 (emphasis added). The defendants identified at least seven specific, non-party witnesses located in Australia. The district court was entitled to consider their location in its analysis without first finding them unwilling to participate.

Lastly, Tiber Creek protests the district court even considering the voluntary administration proceeding in Australia. Tiber Creek claims that the Australian proceedings must be recognized by a United States bankruptcy court pursuant to Chapter 15 of the Bankruptcy Code before the district court can afford them any weight in the *forum non conveniens* analysis. Nothing before us supports that argument. Chapter 15 aims "to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a). Under its provisions, a "foreign representative" appointed to "administer the reorganization or the liquidation" of a debtor in a foreign proceeding or "to act as a representative of such foreign proceeding," *id.* § 101(24), can petition for formal recognition of that proceeding in a United States court, *id.* §§ 1501(b), 1515(a). Upon recognition, a foreign representative may seek to stay parallel actions or other relief necessary to assist the foreign proceeding. *See id.* § 1521. The statute does not apply here,

14

where the defendants are not foreign representatives and do not seek relief available under Chapter 15. *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017). Tiber Creek cites no authority that would require formal recognition of foreign proceedings before a court can consider them as a relevant factor in the *forum non conveniens* analysis.

Tiber Creek calls the voluntary administration "totally irrelevant to *Ellume I*," in which Ellume USA was the sole defendant. Opening Br. 38. It reiterates that Ellume USA was not in voluntary administration and the DOCA did not prohibit suits against Ellume USA. By focusing exclusively on its breach of contract claim against Ellume USA, Tiber Creek asks us to ignore its efforts in *Ellume II* to fend off Ellume USA's defenses related to the Deed of Variation and 2022 Services Agreement with Ellume Ltd., which necessarily draw in the Australian proceedings, documents, and witnesses. One could balance these considerations differently than the district court did. But "[a]t its immovable core, the abuse of discretion standard requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008). We are satisfied that the district court applied the correct legal framework, considered the relevant factors, and reached a permissible conclusion. Accordingly, we find no abuse of discretion.

### B.

Tiber Creek also appeals the district court's denial of its motion to amend the judgment. We review the district court's denial of post-judgment relief under Rules 59(e) and 60(b) for an abuse of discretion. *See Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir.

15

2011); *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010). In general, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks omitted).

The district court declined to reconsider the dismissal under Rules 59(e) and 60(b) based on Tiber Creek's "newly discovered evidence," namely, proof that Ellume Ltd. entered liquidation several weeks after the judgment. As the court explained, "'under both rules,'" the newly discovered evidence "'must have been in existence at the time'" of the court's ruling. *Tiber Creek*, 2023 WL 5987385, at *2 (quoting 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2859 (3d ed.)). On appeal, Tiber Creek asserts that "pre-ruling evidence" "portended the subsequent collapse of the deal" between Ellume Ltd. and Hough Consolidated. Opening Br. 43–44. That argument does not undermine the district court's sound reasoning in denying reconsideration based on a post-judgment event. And as the district court observed, "the termination of the voluntary administration without payment to Tiber Creek was always a potential outcome." *Tiber Creek*, 2023 WL 5987385, at *3.

## III.

For the foregoing reasons, the district court's judgment is

*AFFIRMED*.

16

RICHARDSON, Circuit Judge, dissenting:

By saying so little, the majority provides little to disagree with. In fact, apart from the disposition, I agree with almost everything the majority says about the district court's *forum non conveniens* analysis. I agree that the district court nominally acknowledged the deference given to Tiber Creek's choice of home forum. *See ante* at 11. I agree that the district court was entitled to consider the interplay between *Ellume I* and *Ellume II*, which were consolidated. *See ante* at 11–12. I agree that it could consider the permissive forum-selection clauses signed by Tiber too. *See ante* at 12–13. Same with the cost of bringing in willing witnesses. *See ante* at 13–14 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). And with the Australian bankruptcy. *See ante* at 14.

My disagreement is instead with what the majority *doesn't* say. At no point does the majority explain why, after taking all these considerations into account, the district court was permitted to weigh them as it did and take the exceedingly rare step of dismissing a lawsuit filed by a citizen plaintiff in its home forum. While "[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court," the district court's decision "deserves substantial deference" only when, among other things, "its balancing of [the public and private interest] factors is reasonable." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). I do not believe the district court's analysis was reasonable here.

Before taking a walk among the legal trees where visibility can be obscured by a canopy of jargon, pause to look at the forest. What do we have? We have an American company, Tiber Creek, run by an American citizen, John Clerici, performing consulting

17

work in America to help secure a grant of American taxpayer dollars from the American government. After an alleged contract breach, that American company, based exclusively in the state of Virginia, sued in the forum it was geographically closest to: the United States District Court for the Eastern District of Virginia. Yet the district court thought that "fundamentally, this is an Australian matter for Australia to decide." J.A. 773. Such a result defies common sense.

It also defies the law. On appeal, we assess whether the district court's *forum non conveniens* analysis was reasonable by looking for "affirmative evidence" that the district court understood the appropriate legal framework and "analyze[d] the case accordingly." *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 803 (2013). Far from evincing an understanding of the correct legal framework, the affirmative evidence in the record suggests that the district court made two related errors in its analysis. First, it failed to afford Tiber Creek the heightened deference owed to a plaintiff suing in its home forum. Second, it mistakenly focused on how convenient it would be to litigate in Australia, as opposed to how inconvenient it would be to litigate in Virginia. Together, these amounted to an abuse of the district court's discretion.

Dismissal for *forum non conveniens* is supposed to be "rare." *Gilbert*, 330 U.S. at 509. And the Supreme Court has told us more than once that it should be particularly rare when the plaintiff has chosen to sue in his "home forum."[1] *Piper Aircraft*, 454 U.S. at

---

[1] When a suit is between an American plaintiff and a foreign defendant, the home forum "refers to any federal district in the United States." *DiFederico*, 714 F.3d at 803 n.4. When a suit is between two Americans, the home forum refers to the federal districts

18

255–56.  When a defendant complains of inconvenience in such circumstances, the court should not "deprive[]" the plaintiff "of the presumed advantages of his home jurisdiction" unless there is a "clear showing" in the record that the forum would cause "such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience."  *Koster*, 330 U.S. at 524.  This seldom occurs:  "In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown."  *Id.*  While "[a] citizen's forum choice should not be given dispositive weight," *Piper Aircraft*, 454 U.S. at 255 n.23, the choice of home forum "should rarely be disturbed."  *Gilbert*, 330 U.S. at 508; *accord SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (stating that a court should only dismiss a citizen plaintiff's suit in "unusually extreme circumstances" where "material injustice is manifest" (quotation omitted)); *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000) (requiring the defendant to show that circumstances "weigh[] heavily on the side of dismissal").

In other words, when conducting the *forum non conveniens* analysis for a citizen plaintiff, the district court "must apply . . . increased deference" and place a heavy thumb on the scale in favor of keeping the case where it is.  *DiFederico*, 714 F.3d at 803.  But the district court placed no thumb on the scale for Tiber Creek.  While the district court mentioned the "great weight" given Tiber Creek's choice of forum once, in passing, at the

_____

in the state in which the plaintiff resides.  *See Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 520–21, 524 (1947).

very beginning of the hearing, J.A. 758, no deference appears in the contents of its analysis. Instead, the district court appears to have treated Tiber Creek and Ellume as equals, spending as much time discussing Ellume's convenience as Tiber Creek's. *See ante* at 8 (quoting the district court).

To be sure, the district court also briefly mentions that litigating in Australia poses fewer evidentiary issues and respects the ongoing bankruptcy proceeding in Australia. *See ante* at 9 (quoting the district court). But this cursory mention of these other considerations does not justify dismissal. The heightened deference afforded to citizen plaintiffs means that Tiber Creek only needed to make "a real showing of convenience" in order to "outweigh the inconvenience" that Ellume may have shown. *Koster*, 330 U.S. at 524. And it should not have been hard for Tiber Creek to make that showing. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft*, 454 U.S. at 255–56. After all, "there is inherent convenience to bringing this case in [Tiber Creek's] legal backyard." *DiFederico*, 714 F.3d at 807. Yet the district court made no effort to explain how Tiber Creek failed to meet this standard.

This brings us to the second error in the district court's analysis. The district court perhaps didn't explain how litigating in Virginia was inconvenient because the district court's analysis was focused on the wrong forum entirely. The district court was supposed to require Ellume to show that the "oppressiveness and vexation" from litigating in Virginia would be "out of all proportion" to Tiber Creek's convenience. *Koster*, 330 U.S. at 524. In other words, the district court's "balancing of conveniences" should have been between Tiber Creek's convenience *in Virginia* and Ellume's inconvenience *in Virginia*. *Id.* Yet

20

the district court framed the inquiry as whether "it is more convenient to be in Australia." J.A. 773. This was the wrong inquiry—and the majority repeats the district court's mistake. *See ante* at 10.

The Supreme Court has never suggested that a suit that would be convenient to litigate in the plaintiff's chosen forum could be dismissed simply because an alternative forum would be *more* convenient. Instead, the Supreme Court has consistently emphasized that dismissal for *forum non conveniens* should only occur when "trial in the chosen forum would be unnecessarily burdensome." *Piper Aircraft*, 454 U.S. at 255 n.23; *see also id.* at 259 (permitting dismissal when "trial in the plaintiff's chosen forum would be burdensome"); *id.* at 249 ("where trial in the plaintiff's chosen forum imposes a heavy burden"); *Koster*, 330 U.S. at 531–32 ("when a defendant shows much harassment"); *Gilbert*, 330 U.S. at 508 ("the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant"). It's true that in *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242 (4th Cir. 2011), we summarized the *forum non conveniens* inquiry as requiring a district court to "determine whether the alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Id.* at 248 (citing *Piper Aircraft*, 454 U.S. at 241). But to the extent *Jiali Tang* and the cases that cite it[2] suggest that *forum non conveniens* dismissal is appropriate even when the plaintiff's

---

[2] A handful of cases parrot *Jiali Tang*'s language, though it appears that none apply the erroneous standard. *See, e.g.*, *DiFederico*, 714 F.3d at 800, 801, 808 (repeating the erroneous "more convenient" standard from *Jiali Tang* but then correctly applying Supreme Court precedent); *AdvanFort Co. v. Zamil Offshore Servs. Co.*, 134 F.4th 760, 768, 772–74 (4th Cir. 2025) (same).

21

chosen forum is convenient, their reasoning is "inconsistent with Supreme Court authority" and "we are not bound to follow them." *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 504 (2023) (quotation omitted).

To put a fine point on it:  The *forum non conveniens* question is not whether another venue is more convenient than the one the plaintiff has chosen, but whether the plaintiff's chosen venue is untenably inconvenient. *See Koster*, 330 U.S. at 524.  Outside of such a situation, "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous" and have what the Supreme Court has termed "plaintiff's venue privilege." *See Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quotation omitted).  So even if Australia *was* more convenient for both parties, Tiber Creek's suit could proceed in Virginia in many circumstances.  To have the suit dismissed, Ellume needed to show not that Australia was better, but that Virginia was unacceptable.

Ellume made no such showing, nor did the district court recognize that it needed to. In its discussion with counsel, the district court repeatedly focused on how it would "be more convenient for everyone to have this matter decided in Australia." J.A. 762.  When explaining its ultimate decision, the district court incorrectly described the question before it as "whether or not the defendants have demonstrated that it is more convenient to be in Australia." J.A. 773.  And under that erroneous standard, the district court highlighted, among other facts, that Ellume USA's head is "in Australia," and how Tiber Creek "anticipated that it might have to resolve matters in Australia"—two considerations that

22

say nothing at all about the inconvenience of litigating in Virginia.[3] J.A. 773. To the extent the district court dismissed the case by considering applying the wrong legal standard and by considering immaterial facts, it abused its discretion.

Whether by looking at the trees or by looking at the forest, neither law nor common sense supports the district court's decision to send the parties' dispute to Australia. With little explanation, the majority doubles down on the district court's error. Because, fundamentally, this is an American matter for America to decide, I respectfully dissent.

---

[3] The fact Tiber Creek anticipated litigation abroad would be relevant if it were "doing extensive foreign business," in which case we would "partially discount[]" the deference afforded to its choice of home forum. *See DiFederico*, 714 F.3d at 807 (quotation omitted). But there is no suggestion here that Tiber Creek's limited contractual arrangements with Ellume, all of which involve exclusively domestic performance, amount to "extensive foreign business."